UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                    CASE NO: 2:11-cr-80-FtM-29UAM

ALFREDO J. SARARO, III

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Release Inmate Trust/Commissary Funds from Government Seizure (Doc. #227) and the Motion of United States of America to Authorize Payment from Inmate Trust Account (Doc. #228), both filed on July 13, 2016. Responses (Docs. ##232, 233) were filed, and the Court conducted an evidentiary hearing on October 20, 2016. The United States submitted a Notice of Filing Supplemental Authorities (Doc. #239) on October 21, 2016.

**I.**

Defendant Alfredo J. Sararo, III (defendant or Sararo) was convicted after a jury trial of multiple counts of Wire Fraud and Filing False Income Tax Forms. (Doc. #92.) On January 7, 2013, defendant was sentenced to a total of 108 months imprisonment, followed by three (3) years supervised release (Docs. ##151, 153.) The Court also imposed $900 in special assessments and restitution totaling $2,054,563.00 as to nine (9) specifically identified non-government victims. (Id.) At all relevant times, defendant has

been serving his sentence at the United States Penitentiary in Pensacola, Florida, and is scheduled to be released in 2020.

Defendant is enrolled in the Inmate Financial Responsibility Program and is meeting the financial obligations of that program. As of June 23, 2016, defendant has paid the entire $900 in special assessments and $300 of the restitution.  (Doc. #228, ¶ 3.)  Thus, defendant currently owes $2,054,263.00 in restitution principal. (Id.)  Since 1930, an incarcerated federal inmate has been provided an individual inmate commissary/trust account maintained by the United States Bureau of Prisons (BOP) into which the inmate, family, friends, and others may deposit funds.  28 C.F.R. § 506.1; (Doc. #239-5 ("Program Statement 4500.11")).  The BOP does not impose any limit on the amount of money an inmate may have in his or her trust account.  The inmate may spend up to $360 a month to buy items through the prison commissary programs, may spend additional amounts on other items available through the BOP (e.g., telephone calls, e-mails), and may transfer an unlimited amount to third parties outside the prison by completing a BOP form.  With certain exceptions, the BOP will not remove funds from an inmate's trust account unless the inmate consents or there is a federal court order directing funds to be removed.  The BOP's 141-page Program Statement 4500.11 (Doc. #239-5) sets forth the policies and procedures for the inmate trust account.

Approximately two years ago, the United States Marshal's Service began an initiative which involved the examination of these inmate trust accounts to determine where there may be collection opportunities to satisfy debt owed by the inmates. Jason Wojdylo, a deputy United States Marshal who is the Chief Inspector of the Marshal Service's Asset Forfeiture division, has been implementing this initiative. Chief Inspector Wojdylo discovered that the top 4,500 inmate accounts within the BOP contained an aggregate amount in excess of $33 million. After experimenting with different threshold amounts, Chief Inspector Wojdylo determined that he would examine any inmate account which had a balance in excess of $2,500. Chief Inspector Wojdylo's experience taught him that this threshold amount was reasonable in light of the number of qualifying inmates and the resources he had to devote to the initiative. This threshold amount has been in effect for about the last year. Deputy Inspector Wojdylo noted his belief that 18 U.S.C. § 3664(n) allowed the government to take all the money in an inmate's trust account, and opined that the $2,500 threshold amount showed "tremendous restraint" by the government.

Chief Inspector Wojdylo obtains a weekly list from the BOP setting forth the inmate trust accounts meeting the $2,500 threshold amount. Typically, there are 80 names which appear on the weekly list. A Deputy U.S. Marshal is assigned to review the court files associated with each of these inmates to determine if

restitution or forfeiture had been ordered. If restitution or forfeiture had been ordered, the case is referred to the U.S. Attorney's Office to determine if the debt has been satisfied or if there is an outstanding balance, and to determine collection efforts for an outstanding balance.

Chief Inspector Wojdylo testified that the BOP has an agreement with the Marshal's Service to "encumber" (i.e., freeze) an inmate's trust account upon a letter request from the Marshal's Service or U.S. Attorney's Office notifying it that the inmate has such an outstanding debt. Encumbered funds may not be accessed or used by the inmate. The funds will not be removed from the inmate's trust account, however, without a federal court order specifically directing a taking of the funds. Only funds in the inmate trust account at the time of the letter are encumbered, and subsequent deposits into the inmate trust account can be used by the inmate unless there is another encumbrance letter from the Marshal/U.S. Attorney.

Defendant Sararo's name appeared on a BOP list since his inmate trust account balance satisfied the $2,500 threshold amount. BOP records show that from July 2, 2013 through August 9, 2016, there were 220 money order deposits of between $30 and $300 into defendant's inmate trust account from outside sources and 40 deposits of defendant's prison wages. (Doc. #233-2.) During this period of incarceration, defendant received

approximately $25,000 deposited into his trust account from his mother, brother, and uncles. Chief Inspector Wojdylo did not know the source of the funds provided by defendant's relatives, but once the money is received in the inmate trust account, it belongs to the inmate. The $25,000 equals about $22.00 for each day of defendant's incarceration.

Between July 1, 2013, and August 11, 2016, defendant made 1,411 withdrawal transactions from his inmate trust account. (Doc. #233-3.) With the exception of three small outgoing payments to his ex-wife, defendant spent the deposited money on the commissary or other internal prison privileges (e.g., telephone, email).

Chief Inspector Wojdylo determined that defendant had been ordered to pay restitution, and referred defendant's case to the U.S. Attorney's Office, which determined that defendant's outstanding debt exceeded his trust account balance. The U.S. Attorney's Office sent a letter to the Bureau of Prisons requesting that it encumber defendant's inmate account. The Bureau of Prisons did so, encumbering the entire $7,647.24 then in the account. The BOP notified defendant of the encumbrance and provided him a copy of the encumbrance letter.

The government offered to settle the dispute with defendant by agreeing to leave at least $500 in the trust account if defendant relinquished his right to the remainder. Defendant

rejected this proposal, and the government now seeks a turnover order of the entire encumbered amount. Chief Inspector Wojdylo recognized that the result of his initiative was that other inmates with restitution obligations were allowed to keep $2,500 in their account while defendant was only offered $500, but attributed this to the extensive discretion of the United States.

Since the encumbrance, defendant's family members have deposited approximately $1,000 into defendant's inmate account. Because the government has not requested that those funds be encumbered, defendant has had access to these funds. The government suggested that it could make such an encumbrance request at any time, since there are no limits on its ability to seek to encumber inmate trust account funds.

**II.**

The implementation of a federal criminal sentence is governed by Chapter 229 of Title 18. 18 U.S.C. § 3558. A person sentenced to pay restitution is required to do so as specified by the Director of the Administrative Office of the United States Courts, id. § 3611, and the Attorney General is responsible for collection of unpaid restitution, id. § 3612(c).

It is undisputed that the Judgment (Doc. #153) imposes monetary penalties of $900 in special assessments and restitution in the principal amount of $2,054,563.00 against defendant Sararo. (Id. at 4-5.) Therefore, defendant "shall make such payment

immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). Here, the Judgment directs that such monetary penalties are due during the period of imprisonment, requiring that defendant pay either at least $25 per quarter or 50% of his prison earnings while he is imprisoned, depending on whether he has a Unicor job. (Doc. #153, pp. 3-4.) During supervised release defendant is required to pay 10% of his monthly income towards the monetary penalties. (Id.) It is now undisputed that defendant has paid the $900 special assessments and $300 towards restitution. Thus, defendant currently owes in excess of $2 million in restitution principal.

The restitution order impacts defendant's property in several ways. For example, the restitution order in the Judgment constitutes "a lien in favor of the United States on all property and rights to property . . . as if the liability of the person . . . [was] a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). Additionally, if a person obligated to pay restitution receives "substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution . . . still owed." Id. § 3664(n).

These provisions, however, are not self-enforcing. Rather, mechanisms for enforcement of a restitution order by the Attorney General are set forth by statute. With three exceptions not applicable to this case, such a judgment may be enforced against "all property or rights to property of the person" subject to the restitution judgment. Id. § 3613(a)(1)-(3). An order of restitution, including mandatory restitution, id. § 3663A(d), "may be enforced by the United States in the manner provided for in subchapter C of chapter 227[1] and subchapter B of chapter 229[2] of this title; or by all other available and reasonable means." Id. § 3664(m)(1)(A)(i), (ii) (footnotes added). See also id. §§ 3556, 3613(f). Thus, the United States may enforce a judgment imposing restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." Id. § 3613(a).

The Federal Debt Collection Procedures Act of 1990 (FDCPA), 28 U.S.C. §§ 3001-3308, "provides the exclusive civil procedures for the United States-- to recover a judgment on a debt . . . ." Id. § 3001(a)(1).[3] The United States may utilize the FDCPA in a criminal case to collect the restitution included in a criminal

---

[1] 18 U.S.C. §§ 3571-3574.

[2] Id. §§ 3611-3614.

[3] "Debt" is defined to include restitution. 28 U.S.C. § 3002(3)(B).

judgment.  United States v. Kollintzas, 501 F.3d 796, 800-01 (7th Cir. 2007); United States v. Mays, 430 F.3d 963, 965 (9th Cir. 2005).  This includes restitution owing to a private party, and not to the United States itself.  United States v. Phillips, 303 F.3d 548, 550-51 (5th Cir. 2002).  While the Marshal's Service has no statutory obligation to collect such restitution, it is required to execute all lawful orders issued under the authority of the United States.  28 U.S.C. § 566(c).

## III.

The government's chosen method of collecting the restitution set forth in the Sararo Judgment was a two-step process.  First, to cause the BOP to freeze the assets in defendant's inmate trust account.  Second, to request the sentencing Court issue an order directing the BOP to forward the frozen funds to the Clerk of the Court as partial satisfaction of the outstanding restitution balance.  Defendant has asked the sentencing Court to remove the BOP encumbrance of his inmate trust account.  The government opposes that request on the merits, and asks the sentencing Court to enter a turnover order compelling the BOP to turn the encumbered funds over to the Clerk of the Court as partial satisfaction of defendant's restitution obligation.

### A. Removal of BOP Encumbrance

The United States effectively seized defendant's inmate trust account by causing the BOP to "encumber" the account, which froze

all amounts in the account as of that date. Defendant seeks an order (essentially an injunction) removing the encumbrance, making arguments sounding in the Fourth Amendment, due process, and/or equal protection.

The Court sees no basis for a sentencing court to exercise subject matter jurisdiction over the BOP when it encumbers inmate funds during the inmate's period of incarceration. Once sentence is imposed, the sentencing court generally loses jurisdiction over the defendant absent a specific statutory grant of authority. Neither defendant nor the United States have identified any statute which would give the sentencing court jurisdiction to review the BOP handling of inmate funds. Rather, an inmate who objects to such action must exhaust prison administrative procedures and then file a civil suit in the district of his incarceration.[4] Because

---

[4]The BOP has established a four-part process for resolving an inmate's grievance: (1) The inmate must "present an issue of concern informally to staff." 28 C.F.R. § 542.13(a); (2) If the issue is not resolved informally, then the inmate may submit to the Warden "a formal written Administrative Remedy Request." Id. § 542.14(a); (3) "An inmate who is not satisfied with the Warden's response may submit an Appeal" to the Regional Director "within 20 calendar days of the date the Warden signed the response." Id. § 542.15(a). The inmate must attach a copy of the form he submitted to the Warden and a copy of the Warden's response. Id. § 542.15(b)(1); (4) "An inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." Id. § 542.15(a). The inmate must attach a copy of the forms he submitted to the Warden and the Regional Director and a copy of their responses. Id. § 542.15(b)(1). See DeBrew v. Atwood, 792 F.3d 118, 126 (D.C. Cir. 2015).

there is no indication defendant exhausted his administrative remedies, and any civil suit would be in the Northern District of Florida, defendant's motion will be dismissed for lack of subject matter jurisdiction.

### B. Requested Turnover Order

Despite the payment schedules set forth in the Judgment, the United States can lawfully take efforts to collect the outstanding restitution amount. United States v. Ekong, 518 F.3d 285, 286 (5th Cir. 2007). The Court rejects defendant's argument that his current compliance with the payment schedule and the financial responsibility plan of the BOP precludes the United States from attempting to further collect on the restitution.

The United States may enforce the FDCPA through the sentencing court to collect restitution. United States v. Ernst, No. 2:06-cr-10-FtM-29DNF, 2010 WL 3746950, at *2 (M.D. Fla. Sept. 21, 2010) (citing Kollintzas, 501 F.3d at 800-01; Mays, 430 F.3d at 965). Here, however, the government did not proceed under the FDCPA or comply with its requirements in this case. The government points to no statute which allows the sentencing court to simply order the BOP to disburse (or not disburse) funds from an inmate's trust account. Additionally, the government points to no statute or rule of procedure which allows such a collection practice for a civil judgment. 18 U.S.C. § 3613(a). The undersigned has previously found that it lacked the authority to do so, United

<u>States v. Lorie Ann Williams</u>, Case No. 2:15-cr-14-FtM-29, and continues to be of that view.  The Court is not persuaded by the decisions to the contrary cited by the government.  Accordingly, the government's motion is denied.

Accordingly, it is hereby

**ORDERED:**

1.  Defendant's Motion to Release Inmate Trust/Commissary Funds from Government Seizure (Doc. #227) is **DISMISSED** for lack of subject matter jurisdiction.

2.  The Motion of United States of America to Authorize Payment from Inmate Trust Account (Doc. #228) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __31st__ day of October, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record